887 So.2d 8 (2004)
TERREBONNE PARISH SCHOOL BOARD
v.
SOUTHDOWN, INC., Shell Oil Company, Davis Oil Company, Union Oil Company of California, Burlington Resources Oil & Gas Company & Mobil Exploration & Producing North America, Inc.
No. 2003 CA 0402.
Court of Appeal of Louisiana, First Circuit.
July 14, 2004.
*9 Joseph G. Jevic, III, Houma, for Plaintiff-Appellant Terrebonne Parish School Board.
James R. Swanson, Samuel A. Giberga, Joseph C. Peiffer, New Orleans, for Defendant-Appellee Cemex, Inc. as successor in interest to Southdown, Inc.
David N. Schell, Jr., New Orleans, for Defendant-Appellee Louisiana Land & Exploration Company.
Robert B. McNeal, New Orleans, for Defendant-Appellee Mobil Exploration & Producing North America, Inc.
Elizabeth S. Wheeler, New Orleans, for Defendant-Appellee Shell Oil Company.
Etienne C. Lapeyre, New Orleans, for Defendant-Appellee Davis Oil Company.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
PETTIGREW, J.
Plaintiff school board filed suit and alleged that defendant oil companies engaged in a continuous course of conduct through oil and gas operations, drilling, and/or pipeline activities that has damaged and continues to damage its property. Peremptory exceptions raising objections of prescription were later filed on behalf of several defendants that resulted in the dismissal of said parties. Similar exceptions were thereafter filed on behalf of the remaining defendants that resulted in judgments dismissing of the school board's remaining claims. From these judgments, the school board has appealed.

FACTS
This is a suit filed by the Terrebonne Parish School Board ("TPSB") seeking full restoration of its property and/or monetary damages in tort and contract as a result of the erosion and diminishment of a Section 16 tract leased to various oil companies. The TPSB alleges in its Petition For Damages that it is, and has been since the early 1800s, the owner of all of Section 16, Township 18 South, Range 16 East, Terrebonne Parish, Louisiana ("the TPSB property").[1] Said property is comprised primarily of coastal marshlands. Since that time, the TPSB has administered these and other public trust lands for the benefit of public education in the parish through the granting of mineral leases, trapping leases, and pipeline and canal *10 servitudes. Said oil companies included Shell Oil Company ("Shell"), Davis Oil Company ("Davis Oil"), Union Oil Company of California ("Union Oil"), Louisiana Land and Exploration Company ("L.L. & E."), and Mobil Exploration and Producing North America, Inc. ("Mobil") and/or their predecessors in title.
The TPSB became aware that the section sixteen marshlands under its management had been damaged due to erosion from canals and exploration activities undertaken by individual oil and gas firms in connection with agreements made at various times over the past forty years.

COMMENCEMENT OF THE LITIGATION
In an attempt to rectify the damage to its property, the TPSB filed suit in the 32nd Judicial District Court on September 29, 1999, naming various oil companies as defendants. Defendants named therein were Southdown, Shell, Davis Oil, Burlington Resources Oil & Gas Company[2], Mobil, and Union Oil. The TPSB alleged that in conducting oil and gas exploration activities, the aforementioned defendants had "dredged access canals, constructed well locations, developed production facilities, and/or constructed pipelines and/or constructed reserve and/or disposal pits on the [TPSB] property." The TPSB claimed that the said "defendants have breached their servitude, right-of-ways, and/or mineral leases by failing to restore the [TPSB] property as near as possible to its original condition." The TPSB further claimed that this "continuing failure [by defendants] to restore the [TPSB] property has caused and continues to cause severe ecological damage ... by altering and/or destroying the natural hydrology of the [marsh] located in Section 16, in addition to causing loss of acreage due to continuing erosion."
Claiming that the aforementioned damage had been a gradual and continuing process, the TPSB relied on the doctrine of contra non valentem, and alleged that it did not know and could not have known until within the last year that the failure of the defendants to restore its property was continuing to cause damage, thereby giving rise to a breach of contract claim.
In addition, or in the alternative, the TPSB alleged that the willful and Intentional failure on the part of defendants to abate the continuing erosion coupled with defendants' failure to restore the property to its original condition constituted continuing tortious conduct for which the defendants were liable in solido, making each defendant liable to repair the resulting damage. The TPSB further alleged that the failure by each defendant to remove the access canals dredged, placed, constructed, or erected on its property was a continuing trespass that had caused unreasonable property damage and further constituted a continuing trespass that has precluded the tolling of prescription.
The TPSB prayed for judgment in its favor against defendants for full restoration of its property, or for damages for breach of contract, or for damages for committing a continuous trespass, and for all costs of these proceedings.

ACTION OF THE TRIAL COURT
TPSB later compromised its claims against Union Oil, and through an order *11 signed April 24, 2001, TPSB's claims against Union Oil were dismissed with prejudice.
On February 22, 2002, the trial court heard arguments on peremptory exceptions raising the objection of prescription that were urged on behalf of Davis and Shell. The trial court later rendered judgment granting said exceptions and dismissing TPSB's claims against these two defendants on March 7, 2002. On April 5, 2002, the trial court heard arguments on peremptory exceptions urged by Southdown and L.L. & E. together with a motion for summary judgment and peremptory exception as to prescription filed on behalf of Mobil. The trial court later rendered judgment granting said motion for summary judgment and maintaining said exceptions, thereby dismissing TPSB's claims against these remaining defendants on April 16, 2002. The April 16, 2002 judgment further designated that it and the judgment of March 7, 2002, were final and appealable as both effectively dismissed the claims against all defendants.
TPSB filed a petition for a devolutive appeal on April 30, 2002.

ISSUES ON APPEAL
In connection with its appeal in this matter, the TPSB presents the following issues for review and consideration by this court:
1. Whether the district court erred in dismissing [TPSB's] suit on summary judgment on the grounds that plaintiff's claims have prescribed; and
2. Whether the district court erred in holding that Louisiana's constitutional prohibition of prescription running against damage claims to State owned lands did not apply.

STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

DISCUSSION
In considering the issues set forth on appeal by TPSB, we will consider these issues in reverse order and address the second issue raised by TPSB first.

Applicability of Constitutional Prohibition on Prescription
The TPSB contends that the trial court erred in holding that the constitutional prohibition of prescription claims against lands owned by the State of Louisiana did not apply in this case. Article 12, Section 13 of the Louisiana Constitution of 1974, provides that "Prescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." An identical provision was found in Article 19, Section 16 of the 1921 Constitution, as well as in Article 193 of the 1913 Constitution and Article 193 of the 1898 Constitution.
In support of this proposition, the TPSB relies on State, through Department of *12 Highways v. City of Pineville, 403 So.2d 49, 52 (La.1981), that cited State v. F.B. Williams Cypress Co., 131 La. 62, 58 So. 1033 (La.1912), for the proposition that "when the state holds title to property, prescription cannot run, notwithstanding the fact that the property is administered by a state agency."
Defendants respond with argument that said language is merely dicta, and does not adequately describe the holding in F.B. Williams. Defendants assert that the language in F.B. Williams that prescription does not run against the State as trustee does not decide the issue here where the TPSB is the party plaintiff. The point made by the court in City of Pineville was simply that the State does not lose its immunity from prescription for claims that the State itself brings simply because the lands are administered by a state agency. In City of Pineville, the Louisiana Supreme Court held:
[T]he "State," for the purposes of constitutional immunity from prescription, does not include a state agency which is a body corporate with the power to sue and be sued and which, when vested with a cause of action, is the sole party capable of asserting it. Regardless of its status as an instrumentality of the state, such an agency remains a distinct legal entity subject to claims of prescription except where the law provides otherwise.
State, through Department of Highways v. City of Pineville, 403 So.2d at 52. The State of Louisiana is not a plaintiff in the instant case, and the governing authority of the parish, Terrebonne Parish Consolidated Government, did not file suit on behalf of the State. Instead, the TPSB asserts that it is the owner of all of the TPSB property.
In a similar case in federal court, Terrebonne Parish School Board v. Mobil Oil Corporation, the Fifth Circuit noted that the federal district court held that Louisiana's constitutional suspension of prescription established in favor of the State pursuant to Article 12, Section 13 of the Louisiana Constitution of 1974, is inapplicable when the suit is brought not by the state, but by a separate state agency such as a school board. See, Terrebonne Parish School Board v. Mobil Oil Corporation, 01-31190 (5th Cir.11/13/02), 310 F.3d 870, 881. In affirming the district court, the Fifth Circuit further noted, "Louisiana's statutory provision addressing precisely the same kind of restoration claims that the [TPSB] now seeks to prosecute in its own right requires that such suit be brought in the name of the state. See [La. R.S. 41:963]." Terrebonne Parish School Board v. Mobil Oil Corporation, 310 F.3d at 881-82.
Upon review of the record in this matter, the relevant federal and state jurisprudence, and the applicable constitutional provision, we affirm the trial court's decision to not apply the State's constitutional immunity from prescription to a suit brought not by, or in the name of the State, but rather by a separate state agency such as TPSB pursuant to State, through Department of Highways v. City of Pineville, 403 So.2d at 49 (La.1981) and Terrebonne Parish School Board v. Mobil Oil Corporation, 01-31190 (5th Cir.11/13/2002), 310 F.3d 870.

Applicability of Contra Non Valentem
In maintaining the peremptory exceptions of prescription initially urged on behalf of Davis Oil and Shell, the trial court, upon reviewing the evidence, noted that the TPSB had knowledge of the problem, and had failed to act and that for this reason the doctrine of contra non valentem was not applicable.
*13 The trial court declined to apply contra non valentem to the facts presently before the court and adopted the reasoning set forth in the supporting memoranda submitted on behalf of Shell and Davis Oil. In its memorandum in support of its peremptory exception as to prescription, Davis Oil points out that while the TPSB does not state when the damage to its property arose, the TPSB tacitly acknowledges in its petition that the actions by defendants that gave rise to its claims occurred more than ten years prior to the filing of its petition. Davis Oil asserted that the TPSB "has known for decades that access canals dredged in connection with oil and gas exploration activities on sixteenth section lands have been a cause of the progressive conversion of marshland to open water." In connection therewith, Davis Oil attached a copy of a newspaper article from the Houma Daily Courier dated May 8, 1981, wherein the TPSB decided to reconsider an oil company's request to dredge a canal that serviced a drilling site, as some school board members feared that dredging would make an already bad erosion problem worse.
Davis Oil also attached a copy of Proceedings of the [Terrebonne Parish] School Board Meeting of August 18, 1981, wherein the TPSB approved the hiring of an engineering firm, T. Baker Smith & Son, Inc., to prepare a report regarding the erosion of marshland in sixteenth section lands. In January, 1982, T. Baker Smith submitted to the TPSB its report entitled, "Preliminary Erosion Study of Section 16 Lands in Terrebonne Parish, Louisiana." Selected excerpts of the report were also attached to Davis Oil's memorandum. Said pages indicated that T. Baker Smith found that there had been a decrease in sixteenth section lands due in part to the breakup of the existing freshwater marsh because of the introduction of saltwater via "navigation, drainage and petroleum related canals."
At a school board meeting held on August 17, 1982, the TPSB unanimously approved the forwarding of a letter to a representative of the U.S. Army Corps of Engineers announcing that the TPSB had formed a special committee charged with the responsibility of studying, managing, and monitoring the preservation of sixteenth section lands. In March 1993, Coastal Environments, Inc. forwarded a proposal to said committee offering to assist the TPSB in identifying "possible damages" on sixteenth section lands for which the TPSB could seek redress from third parties. The Section 16 Land Committee subsequently decided not to retain Coastal Environments, Inc. for this proposed study.
In 1994, the TPSB received a preliminary plan from the U.S.D.A. Soil Conservation Service to manage land in an area that included seventeen Section 16 tracts in Terrebonne Parish, including the tract at issue in this litigation. The TPSB hired the firm of Morris P. Hebert, Inc., to assess whether said plan would result in the closure of any canals in sixteenth section lands and the resulting economic impact of any such canal closings. Following an inspection of the property, Morris P. Hebert, Inc. prepared and forwarded to the TPSB, in April 1995, a report that noted the existence of "obvious erosion problems."
On August 19, 1996, the TPSB was advised by its counsel in this litigation that its sixteenth section lands may have a "monstrous amount of damage" as a result of the dredging of access canals by oil and gas exploration companies and that actions should be taken to stop said damage and repair it. Nevertheless, the TPSB waited almost three years before filing the instant *14 lawsuit to recover for the damage to the TPSB property.
Based upon the foregoing facts as set forth in the record, it is clear that the TPSB was advised many times of the damage to its property, and for this reason, the trial court's decision that contra non valentem is inapplicable to the present facts was correct.
Pursuant to our discussion above, we conclude that the constitutional prohibition on prescription and the doctrine of contra non valentem are inapplicable to the TPSB under the facts of this case. Accordingly, we affirm the trial court's judgment maintaining the various peremptory exceptions as to prescription.

Dismissal of TPSB's Suit on Summary Judgment
We turn now to the initial error assigned by TPSB. TPSB contends that the trial court erred in granting the motion for summary judgment filed by Mobil. We have heretofore upheld the trial court's maintenance of defendants' (including Mobil's) peremptory exceptions that raised the objection of prescription. For this reason, we pretermit consideration of the trial court's grant of Mobil's motion for summary judgment.

CONCLUSION
For the above and foregoing reasons, the judgments of the trial court that maintained the peremptory exceptions as to prescription filed on behalf of defendants are affirmed. All costs of this appeal are assessed against plaintiff, Terrebonne Parish School Board.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurring.
I agree with the holding of the majority that the state's constitutional immunity does not apply in this case. However, I base my opinion on the failure of the Terrebonne Parish School Board to offer any evidence that it was not the sole party capable of asserting the causes of action alleged herein. See State, through Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981). In all other respects, I agree with the majority opinion.
NOTES
[1] The sixteenth section of every township was reserved by Congress from among the public lands in newly created states for the support of public education. Title to sections sixteen in Terrebonne Parish evidently passed from the United States to the TPSB sometime during the nineteenth century. See Terrebonne Parish School Board v. Columbia Gulf Transmission Co., 290 F.3d 303, 307 (5th Cir.2002).
[2] The petition filed by the TPSB improperly named Burlington Resources Oil & Gas Company as a defendant and alleged that Burlington was the successor of L.L. & E. L.L. & E. filed a peremptory exception raising the objection of prescription and stated that although Burlington Resources, Inc. acquired L.L. & E., L.L. & E. and Burlington Oil & Gas Company L.P. remain wholly separate and independent subsidiaries of Burlington Resources, Inc.