# STATE OF LOUISIANA

## COURT OF APPEAL

### FIRST CIRCUIT

* * * * * * *

### 2019 CA 0270

### HEATHER BOURG AND SUSAN BOURG

#### VERSUS

### SAFEWAY INSURANCE COMPANY OF LOUISIANA AND CHRIS MARTINEZ

JUDGMENT RENDERED: **MAR 0 5 2020**

* * * * * * *

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne • State of Louisiana
Docket Number 181,671 • Division B

The Honorable John R. Walker, Jr., Judge Presiding

* * * * * * *

| | |
|---|---|
| Michael W. Landry<br>Angelique P. Provenzano-Walgamotte<br>Tracy L. Oakley<br>W. Brett Cain<br>Lafayette, Louisiana | ATTORNEYS FOR APPELLANTS<br>DEFENDANTS—Safeway<br>Insurance Company of Louisiana<br>and Chris Martinez |
| Holli K. Yandle<br>*Assistant Attorney General*<br>Lafayette, Louisiana | |
| Dexter A. Gary<br>Danny J. Lirette<br>Houma, Louisiana | ATTORNEYS FOR APPELLEE<br>PLAINTIFF—Susan Bourg |

* * * * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**WELCH, J.**

In this motor vehicle collision case, the defendants seek review of a summary judgment granted in favor of the plaintiff, finding the insurer in breach of its duty of good faith and fair dealing; subject to the penalties and attorney's fees provisions of La. R.S. 22:1892; and awarding the plaintiff $22,862.47, plus costs and interest on her third-party property damage claim. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On January 4, 2018, plaintiffs Heather Bourg ("Heather") and Susan Bourg ("Ms. Bourg") filed a petition for damages against defendants Chris Martinez and Safeway Insurance Company of Louisiana ("Safeway"). According to the allegations of the petition, on October 21, 2017, the 2015 Chevrolet Silverado operated by Mr. Martinez rear-ended the 2016 Hyundai Sonata operated by Heather and owned by Ms. Bourg. On the date of that accident, Mr. Martinez had a policy of automobile liability insurance with Safeway, which provided coverage for the accident.[1] Heather claimed that as a result of the accident, which was caused solely by the negligence of Mr. Martinez, she suffered personal injuries and sought to recover general and special damages.

Ms. Bourg also raised a property damage claim, alleging entitlement to statutory penalties and attorney's fees for Safeway's alleged breach of the insurer's duty of good faith and fair dealing. She claimed that Safeway failed to make an offer to settle her property damage claim by paying to repair her vehicle in accordance with La. R.S. 22:1892, which provides that when a vehicle sustains property damage in a crash, the insurer has thirty days to adjust the claim and make a written offer to settle the matter. Ms. Bourg alleged that she provided

---

[1] The policy, No. 2361851-LA-PP-004, had liability limits of $15,000.00 per person/$30,000.00 per accident.

2

satisfactory written proof of loss and demand to Safeway, but that Safeway arbitrarily, capriciously, or without probable cause failed or refused to make a timely reasonable offer to settle her property damage claim.[2] While Safeway offered to settle her claim by totaling her vehicle, she argued that the offer was unreasonable, and therefore arbitrary, capricious, and without probable cause, because her vehicle was not a "total loss" as evidenced by the facts and defined by the law.

The plaintiffs also filed an amended petition for damages, wherein Ms. Bourg alleged that she sustained additional damages, including the cost of renting a vehicle and the diminished value of her vehicle.

In response to the plaintiffs' petition, the defendants generally denied the allegations and admitted only that a collision had occurred involving the vehicles operated by Heather and Mr. Martinez and that Safeway had issued a policy of automobile liability insurance to Mr. Martinez that was in full force and effect on the date of the accident. In addition, Safeway asserted that it fulfilled all of its duties to Ms. Bourg, including those imposed by La. R.S. 22:1892, with regard to her property damage claim.

Thereafter, Ms. Bourg[3] filed a motion for summary judgment against Safeway on the issue of Safeway's alleged breach of the insurer's duty of good faith and fair dealing and her entitlement to penalties and attorney's fees under La. R.S. 22:1892. Ms. Bourg alleged that she made a written demand on Safeway to have her vehicle repaired on December 14, 2017. Despite her demand, she

---

[2] Ms. Bourg alleged that Safeway failed to fairly and promptly adjust her property damage claim within sixty days. That tracks the language of La. R.S. 22:1973(B)(5), not the thirty-day time limit provided for in the statute cited in her petition, La. R.S. 22:1892. As will be discussed herein, there is a close relationship between the conduct described in La. R.S. 22:1892(A)(4) and (B)(1) and La. R.S. 22:1973(B)(5). See **Theriot v. Midland Risk Ins. Co.**, 95-2895 (La. 5/20/97), 694 So. 2d 184, 192 n.14.

[3] Heather did not join Ms. Bourg in the filing of the motion for summary judgment. The trial court later dismissed all of Heather's claims against the defendants prior to the summary judgment hearing, in a judgment signed on July 26, 2018.

claimed that Safeway did not and has not paid to have her vehicle repaired.[4] Ms. Bourg conceded that Safeway offered to settle her claim by declaring the vehicle a total loss and retaining the vehicle. She argued that Safeway's offer was unreasonable, and therefore arbitrary, capricious, and without probable cause, based on the facts and applicable law.

Ms. Bourg claimed that Safeway provided her with a repair estimate on October 25, 2017, showing the cost to repair her vehicle was $7,670.65. On November 1, 2017, Safeway made a written settlement offer for the pre-accident fair market value of her vehicle, in the amount of $12,726.00, with Safeway retaining the salvage. Ms. Bourg argued that Louisiana jurisprudence provides that only when the cost to repair a vehicle exceeds the pre-accident value of a vehicle can an adjuster declare it a "total loss." Ms. Bourg contended that Safeway insisted on totaling her vehicle, even though its own estimate of the cost to repair the vehicle was less than its pre-accident valuation of the vehicle. Ms. Bourg further argued that Safeway ignored the requirement under La. R.S. 32:702(14) that the cost of repair must be equal to or more than seventy-five percent (75%) of the value assigned by the National Automobile Dealers Association ("NADA") Guide, before a vehicle can be declared a total loss. Ms. Bourg pointed out that Safeway's own repair cost estimate showed that the repair cost was less than seventy-five percent (75%) of the value assigned by the NADA Guide, as well as less than seventy-five percent (75%) of its own valuation. Ms. Bourg averred that here the cost to repair her vehicle only approached sixty-seven percent (67%) of the fair market value.

---

[4] The actual cost to repair Ms. Bourg's vehicle was $8,514.48, which she pursued through her own liability insurer. She maintained that her own insurance is a collateral source to which the defendants are not entitled, citing **Rogers v. Graves**, 2006-0648 (La. App. 1st Cir. 2/21/07), 959 So. 2d 990, 993, writ denied, 2007-0939 (La. 6/22/07), 959 So. 2d 500 ("Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.").

4

Accordingly, Ms. Bourg argued that Safeway's failure to pay her property damage claim to have her vehicle repaired or to make a reasonable offer to settle her property damage claim within thirty days of her providing satisfactory written proof of loss and demand was arbitrary, capricious, and without probable cause. She sought summary judgment in her favor holding that Safeway violated the insurer's duty of good faith and fair dealing and is therefore subject to the statutory penalties and attorney's fees provisions of La. R.S. 22:1892. She claimed entitlement to an award of $9,442.14 in damages (the cost to repair her vehicle ($8,514.48) plus the cost of a rental vehicle ($927.66)); a fifty percent (50%) penalty in the amount of $4,721.07; and reasonable attorney's fees in the amount of $3,977.19.

The defendants opposed Ms. Bourg's motion for summary judgment and also moved for a continuance on the summary judgment hearing. Safeway argued that it acted in good faith and dealt fairly at all times and in accordance with La. R.S. 22:1892 regarding Ms. Bourg's property damage claim. Safeway alleged that it determined the vehicle was a "total loss," and on November 1, 2017—eleven days after the accident—it extended a written offer of $12,726.00, with Safeway retaining the salvage. On November 28, 2017, Ms. Bourg countered Safeway's offer, with an offer to settle her claim for $15,700.00 (which included loss of use/rental). On December 5, 2017, Safeway rejected Ms. Bourg's counteroffer and extended another offer to settle Ms. Bourg's claim for $12,726.00, plus $735.00 for loss of use/rental, with Safeway retaining the salvage; or $8,157.37, plus $735.00 for loss of use/rental, with Ms. Bourg retaining the salvage. Ms. Bourg declined Safeway's December 5, 2017 offer. On December 14, 2017, she made a written demand on Safeway to pay to have her vehicle repaired.

Safeway contended that the definition of a "total loss" argued by Ms. Bourg in her motion (when the cost to repair a vehicle exceeds the pre-accident value of a

vehicle) is at odds with the definition of "total loss" provided by La. R.S. 32:702(14), which states that a total loss "means a motor vehicle ... has sustained damages equivalent to seventy-five percent or more of the market value as determined by the most current [NADA] Handbook." Safeway argued that the term "market value" as used within La. R.S. 32:702(14)'s definition of "total loss" is undefined, making it ambiguous and unsusceptible to clear interpretation and proper application. Safeway stated that the NADA Guide contains four possible valuations for a vehicle—(1) rough trade-in, (2) average trade-in, (3) clean trade-in, and (4) clean retail. Safeway averred that Louisiana law does not specify which of those four valuations represents the "market value" as used in the definition of a "total loss."

Safeway further argued that even without guidance as to which NADA Guide valuation should be used as the "market value" in determining a "total loss" under La. R.S. 32:702(14), it was nevertheless able to evaluate the damages to Ms. Bourg's vehicle and determine that it was a "total loss." Safeway laid out three scenarios based on the four possible NADA Guide valuations for a 2016 Hyundai Sonata wherein Ms. Bourg's vehicle would have sustained damages equivalent to seventy-five percent (75%) or more of the market value using Safeway's repair estimate of $7,670.65. In the first scenario, when comparing Safeway's repair estimate to each category of the NADA Guide valuations, two of the four valuations rendered the vehicle a total loss: the rough trade-in percentage would be 84.53% and the average trade-in percentage would be 74.48%. In the second scenario, factoring in the $600.00 rental car expense, two of the four valuations rendered the vehicle a total loss: the rough trade-in percentage would be 91.14% and the average trade-in percentage would be 80.30%. In the third scenario, factoring in the "visible damage estimate," three of the four valuations rendered the vehicle a total loss: the rough trade-in percentage would be 93.82%, the average

6

trade-in percentage would be 82.66%, and the clean trade-in percentage would be 75.52%.

Accordingly, Safeway argued that it properly determined that the vehicle was a "total loss" under the NADA Guide valuations and made a reasonable offer to settle Ms. Bourg's property damage claim within thirty days of receipt of satisfactory written proof of loss and demand. Therefore, Safeway averred that it did not arbitrarily, capriciously, or without probable cause fail or refuse to offer to settle Ms. Bourg's property damage claim or violate its duty of good faith and fair dealing under La. R.S. 22:1892.

Prior to the hearing on Ms. Bourg's motion for summary judgment, Heather and the defendants settled their claims. The trial court dismissed all of Heather's claims against the defendants, while expressly reserving Ms. Bourg's claims against the defendants, in a judgment signed on July 26, 2018. Additionally, the parties stipulated to the defendants' liability as to Ms. Bourg.

Following an August 24, 2018 hearing on Ms. Bourg's motion for summary judgment, the trial court denied Safeway's motion to continue and granted summary judgment in favor of Heather and Ms. Bourg and against the defendants, awarding the plaintiffs damages, penalties, and attorney's fees in the amount of $22,862.47, plus costs and interest. The trial court signed a judgment in accordance with its oral ruling on September 18, 2018.

Thereafter, the defendants filed a motion for new trial and a peremptory exception raising the objections of no cause and no right of action on October 1, 2018. The defendants argued that Ms. Bourg had no cause or right of action to assert the bad faith handling of her property damage claim against Safeway under La. R.S. 22:1892 as a third-party claimant. Safeway contended that its only obligation to Ms. Bourg on her third-party property damage claim was to extend a written offer within thirty days of receipt of satisfactory proof of loss. Safeway

argued that it did extend a written offer on her third-party property damage claim within thirty days of her request, thereby satisfying the requirements of La. R.S. 22:1892(A)(4). Alternatively, the defendants argued that a motion for new trial should be granted. The defendants contended that the trial court failed to adhere to the proper standard for a summary judgment proceeding by weighing evidence instead of determining that there was no genuine issue as to material fact, specifically regarding the valuations in the NADA Guide reports submitted by the parties. Alternatively, the defendants averred that the trial court failed to give credit for any payments made by Ms. Bourg's own insurance company on her behalf, and that the trial court should reduce her award by $6,514.48, which was paid by her insurer for repairs to her vehicle.

Ms. Bourg opposed the defendants' motion for new trial and peremptory exception. Following a hearing, the trial court denied the defendants' motion for new trial and peremptory exception in a judgment signed on November 21, 2018. The defendants now suspensively appeal the November 21, 2018 judgment.

## APPELLATE JURISDICTION

Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc.**, 2011-0520 (La. App. 1st Cir. 11/9/11), 79 So. 3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So. 3d 698. Our appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083; see **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So. 2d 478, 483.

The established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment.[5] **McKee v. Wal-Mart Stores,**

---

[5] By 2005 La. Acts No. 205, § 1 (eff. Jan. 1, 2006), La. C.C.P. art. 2083 was amended to remove the longstanding provision that interlocutory judgments that "may cause irreparable harm" are appealable. An interlocutory judgment is now appealable only when expressly provided by law.

**Inc.**, 2006-1672 (La. App. 1st Cir. 6/8/07), 964 So. 2d 1008, 1013, writ denied, 2007-1655 (La. 10/26/07), 966 So. 2d 583. Similarly, the overruling of a peremptory exception raising the objection of no right of action or no cause of action is an interlocutory ruling that is not appealable. See **Bennett v. Arkansas Blue Cross Blue Shield**, 2005-1714 (La. App. 1st Cir. 9/15/06), 943 So. 2d 1124, 1126, and **CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.**, 2015-0881 (La. App. 1st Cir. 7/14/15), 180 So. 3d 382, 383. However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case. **Carpenter v. Hannan**, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So. 2d 226, 228-29, writ denied, 2002-1707 (La. 10/25/02), 827 So. 2d 1153.

Furthermore, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. **Landry v. Leonard J. Chabert Med. Ctr.**, 2002-1559 (La. App. 1st Cir. 5/14/03), 858 So. 2d 454, 461 n.4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So. 2d 761, 761. Thus, an interlocutory denial of a motion for new trial or denial of a peremptory exception is subject to review on appeal in connection with the review of an appealable judgment in the same case. See **Moran v. G & G Const.**, 2003-2447 (La. App. 1st Cir. 10/29/04), 897 So. 2d 75, 83 n.4, writ denied, 2004-2901 (La. 2/25/05), 894 So. 2d 1148.

The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. **Rao v. Rao**, 2005-0059 (La. App. 1st Cir. 11/4/05), 927 So. 2d 356, 361, writ denied, 2005-

---

La. C.C.P. art. 2083(C). Accordingly, the denial of a new trial is not generally appealable. **McKee**, 964 So. 2d at 1013 n.8.

2453 (La. 3/24/06), 925 So. 2d 1232. A peremptory exception raising the objections of no cause or no right of action presents legal questions, which are reviewed using the *de novo* standard of review. See **Reyer v. Milton Homes, LLC**, 2018-0580 (La. App. 1st Cir. 2/25/19), 272 So. 3d 604, 607, and **LeCompte v. Cont'l Cas. Co.**, 2016-1359 (La. App. 1st Cir. 7/12/17), 224 So. 3d 1005, 1009, writ denied, 2017-1525 (La. 12/15/17), 231 So. 3d 635.

It is obvious from the defendants' brief that they intended to appeal the judgment on the merits—the September 18, 2018 judgment granting Ms. Bourg's motion for summary judgment and awarding damages, penalties, attorney's fees, interest, and costs. The granting of a motion for summary judgment is a final, appealable judgment. La. C.C.P. art. 1915(A)(3). Thus, we will treat the appeal accordingly.

## LAW AND DISCUSSION

### *Motion for Summary Judgment*

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pac. Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So. 3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So. 3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential claims of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more

10

elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Appellate courts review evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pac. Consumer Operations, LLC**, 255 So. 3d at 22.

### *Insurer's Duty of Good Faith and Fair Dealing*

The substantive law applicable to this case are the well-settled principles governing insurance "bad faith" claims in Louisiana. Insurance "bad faith' law is codified in La. R.S. 22:1892 (formerly La. R.S. 22:658) and La. R.S. 22:1973 (formerly La. R.S. 22:1220).[6] The purpose of these penalty statutes is to "provide remedies to insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed."[7] **Lee v. Sapp**, 2017-0490 (La. App. 4th Cir.

---

[6] In 2008 La. Acts No. 415, § 1 (eff. Jan. 1, 2009), the Louisiana Legislature renumbered these statutes without making any substantive changes.

[7] Similar to La. R.S. 22:1892, La. R.S. 22:1973 is another statute that allows the imposition of penalties for an insurer's failure to deal with its insured in good faith. In Section A, La. R.S. 22:1973 broadly states an insurer's duty to its insured to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant or both. In Section B, La. R.S. 22:1973 enumerates five specific acts that constitute breaches of the duties set forth in Section A, including subsection (5): "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." See **Vaughn v. Franklin**, 2000-0291 (La. App. 1st Cir. 3/28/01), 785 So. 2d 79, 91, writ denied, 2001-1551 (La. 10/5/01), 798 So. 2d 969.

There is a close relationship between the conduct described in La. R.S. 22:1892(B)(1) and the conduct described in La. R.S. 22:1973(B)(5). See **Theriot**, 694 So. 2d at 192 n.14. In fact, the conduct is virtually identical, *i.e.*, the failure to timely pay a claim after receiving

12/6/17), 234 So. 3d 122, 128, writ denied, 2018-0044 (La. 3/2/18), 269 So. 3d 709.

Louisiana Revised Statutes 22:1892(A)(1) requires all insurers to pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss. The statute sets forth affirmative duties for insurers and prescribes penalties for their breach. Louisiana Revised Statutes 22:1892 provides, in pertinent part:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. ...
>
> (2) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, R.S. 22:1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
>
> [...]
>
> (4) **All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.**
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and

---

satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause. The primary difference is that under La. R.S. 22:1892(A)(1) and (B)(1), the insurer must pay the claim within thirty days of receiving satisfactory proof of loss, rather than the longer sixty-day period under La. R.S. 22:1973(B)(5). See **Calogero v. Safeway Ins. Co. of Louisiana**, 99-1625 (La. 1/19/00), 753 So. 2d 170, 174. Furthermore, unlike La. R.S. 22:1892, the penalty provision of La. R.S. 22:1973 is applicable only after a showing is made of actual damages resulting from the breach of the insurer's duties. See **Khaled v. Windham**, 94-2171 (La. App. 1st Cir. 6/23/95), 657 So. 2d 672, 680, writs dismissed, 95-1914, 95-1937 (La. 11/1/95), 661 So. 2d 1369.

Where La. R.S. 22:1973 provides the greater penalty, it supersedes La. R.S. 22:1892, such that the insured cannot recover penalties under both statutes. However, because La. R.S. 22:1973 does not provide for attorney's fees, the insured is entitled to recover the greater penalties under its provisions and attorney fees under La. R.S. 22:1892 for its insurer's arbitrary or capricious failure to timely pay his claim after receiving satisfactory proof of loss. See **Calogero**, 753 So. 2d at 174.

12

demand therefor or **failure to make a written offer to settle any property damage claim, including a third-party claim**, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section **when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater,** payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

[…]

(4) Whenever a **property damage claim is on a personal vehicle owned by the third party claimant** and as a direct consequence of the inactions of the insurer and the third party claimant's loss the third party claimant is **deprived of use of the personal vehicle** for more than five working days, excluding Saturdays, Sundays, and holidays, the insurer responsible for payment of the claim shall pay, to the extent legally responsible, for **reasonable expenses incurred by the third party claimant in obtaining alternative transportation for the entire period of time during which the third party claimant is without the use of his personal vehicle.** Failure to make such payment within thirty days after receipt of adequate written proof and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause shall subject the insurer to, in addition to the amount of such reasonable expenses incurred, a reasonable penalty not to exceed ten percent of such reasonable expenses or one thousand dollars whichever is greater together with reasonable attorneys fees for the collection of such expenses. [Emphasis added.]

The statute mandates the imposition of penalties and attorney's fees when an insurer fails to pay a claimant or make a written offer to settle a property damage claim in accord with the statutory provisions. See **Dixon v. First Premium Ins.**

13

**Grp.**, 2005-0988 (La. App. 1st Cir. 3/29/06), 934 So. 2d 134, 141, <u>writ denied</u>, 2006-0978 (La. 6/16/06), 929 So. 2d 1291. This statute must be strictly construed because it is penal in nature.[8] **Richardson v. GEICO Indem. Co.**, 2010-0208 (La. App. 1st Cir. 9/10/10), 48 So. 3d 307, 314, <u>writ denied</u>, 2010-2473 (La. 12/17/10), 51 So. 3d 7. It subjects an insurer, when it is arbitrary or capricious in failing to unconditionally tender the undisputed amount or make a written offer to settle a claim within thirty days of satisfactory proof of loss, to the mandatory imposition of penalties and attorney's fees for the collection of such amount. <u>See</u> **Calogero v. Safeway Ins. Co. of Louisiana**, 99-1625 (La. 1/19/00), 753 So. 2d 170, 174. Under Louisiana Revised Statutes 22:1892, an insurer "has no duty to make an unconditional payment to a third party." The statute requires only a written offer to settle. **Bosley v. Oliphint Enterprises, LLC**, 51,585 (La. App. 2nd Cir. 9/27/17), 244 So. 3d 692, 699.

A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. To establish a "satisfactory proof of loss," the claimant must show that the insurer received sufficient facts to fully apprise the insurer (1) that the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; and (3) that such fault gave rise to damages. The information must also indicate the extent of those damages. <u>See</u> **McDill v. Utica Mut. Ins. Co.**, 475 So. 2d 1085, 1089 (La. 1985); **Fontana v. Louisiana Sheriffs' Auto. Risk Program**, 96-2752 (La. App. 1st Cir. 6/20/97), 697 So. 2d 1037, 1039.

Thus, in order to prevail under La. R.S. 22:1892, a claimant must establish (1) that the insurer received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period, or failed to make a written offer to settle the

---

[8] Louisiana Revised Statutes 22:1892 is also applicable to uninsured (UM) and underinsured (UIM) claims. <u>See</u> **Richardson**, 48 So. 3d at 314.

claim, and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause.

Our Supreme Court has held that the phrase "arbitrary, capricious or without probable cause" is synonymous with "vexatious." A vexatious refusal to pay means one that is unjustified, without reasonable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good faith defense. **Guillory v. Lee**, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1127. The determination as to whether an insurer's handling of a claim is arbitrary and capricious is one of fact. See **Khaled v. Windham**, 94-2171 (La. App. 1st Cir. 6/23/95), 657 So. 2d 672, 679, writs dismissed, 95-1914, 95-1937 (La. 11/1/95), 661 So. 2d 1369.

### Assignment of Error 1: Does La. R.S. 22:1892 Apply to Third-Party Claims?

In their first assignment of error, the defendants argue that the trial court erred in finding that Safeway had a duty to pay Ms. Bourg's third-party claim within thirty days of satisfactory proof of loss, contending that La. R.S. 22:1892(A)(1) only applies to first-party claims. Safeway argued that its only duty in this instance—which it fulfilled—was to make a written offer to settle Ms. Bourg's third-party property damage claim within thirty days after receipt of satisfactory proof of loss under La. R.S. 22:1892(A)(4).

In the world of insurance, a first-party claim is a claim filed by an insured against his own insurer for damage to property or person; whereas a third-party claim is made by a claimant against the insured for damages allegedly caused by the insured. See **Lee**, 234 So. 3d at 130 (citing Gary Langlois, Jr., *Kelly v. State Farm Fire & Casualty Company: Practical Effects Resulting from an Expansion of Insurers' Broad Good–Faith Duty*, 61 Loy. L. Rev. 799, 805 (2015)). This court in **Wicker v. Allstate Prop. & Cas. Ins. Co.**, 2018-1571 (La. App. 1st Cir. 5/31/19), 2019 WL 2317558, at *4 (unpublished), writ denied, 2019-01112 (La.

15

10/8/19), 280 So. 3d 170, held that La. R.S. 22:1892(B)(1) does provide for an award of penalties and attorney's fees in favor of a third-party claimant against an insurer who violates La. R.S. 22:1892(A)(4) by failing to make an offer of settlement after receiving satisfactory proof of loss, if the insurer's failure to do so is arbitrary, capricious, or without probable cause.

In the instant matter, Safeway made a timely, written offer to settle Ms. Bourg's third-party property damage claim under La. R.S. 22:1892(A)(4). Louisiana Revised Statutes 22:1892(A)(4) requires only a written offer to settle; an insurer "has no duty to make an unconditional payment to a third party" under the statute. **Bosley**, 244 So. 3d at 699. Accordingly, the defendants' first assignment of error has merit.

### *Assignment of Error 4: Did Evidence Submitted in Opposition to Plaintiff's Motion for Summary Judgment Create a Genuine Issue of Material Fact?*

For ease of discussion, we next examine the defendants' fourth assignment of error, wherein the defendants argue that the trial court erred in not finding that the affidavit of Lara Simoneaux, submitted in opposition to the motion for summary judgment, created a genuine issue of material fact as to whether Ms. Bourg's vehicle was a "total loss."

As the mover, Ms. Bourg had the burden of proof on the motion for summary judgment. La. C.C.P. art. 966(D)(1). She had to establish that Safeway received satisfactory proof of loss, failed to make a written offer to settle her property damage claim within thirty days, and that Safeway's failure was arbitrary, capricious, or without cause, entitling her to penalties and attorney's fees. See La. R.S. 22:1892(A)(4) and (B)(1). Ms. Bourg does not dispute that she provided satisfactory proof of loss and that Safeway made a timely written offer to settle her claim. Her argument is that Safeway's decision to declare her vehicle a "total loss"

16

and its settlement offer was unreasonable, and therefore arbitrary, capricious, or without probable based on the facts and applicable law.

In support of her motion, Ms. Bourg submitted Safeway's October 25, 2017 repair estimate showing the cost to repair her vehicle was $7,670.65. She also submitted Safeway's initial November 1, 2017 offer to settle her claim for the fair market value of her vehicle in the amount of $12,726.00, with Safeway retaining the salvage. She argued that Louisiana jurisprudence provides that only when the cost to repair a vehicle exceeds the pre-accident value of a vehicle can an adjuster declare it a total loss. Ms. Bourg contended that despite Safeway's own damage estimate and pre-accident fair market valuation, the cost to repair her vehicle did not exceed pre-accident value of her vehicle. Ms. Bourg further argued that using Safeway's damage estimate and fair market valuation, the cost to repair her vehicle only equaled at best sixty-seven percent (67%) of the fair market value—not equal to or more than seventy-five percent (75%) of the fair market value—which is required under La. R.S. 32:702(14) before a vehicle can be declared a "total loss." Based on Safeway's own damage estimate and fair market valuation, Ms. Bourg argued that Safeway was without probable cause to refuse to pay to have the vehicle repaired, and was therefore arbitrary and capricious. Accordingly, she averred that she was entitled to summary judgment as a matter of law and an award of penalties and attorney's fees under La. R.S. 22:1892(A)(4) and (B)(1).

In opposition, the defendants submitted the affidavit of Lara Simoneaux, the property damage supervisor for Safeway. Ms. Simoneaux stated that after Ms. Bourg asserted her property damage claim, Safeway prepared a visible damage estimate totaling $7,670.65. Then, considering the visible damage estimate, the likelihood of hidden damage (which could result in supplemental repair estimates and an increase in the costs of repairs), the likelihood of the availability of like kind and quality/aftermarket parts versus original equipment manufacturer parts to

use in repair, the general condition of the vehicle, accident history, mileage, likelihood of diminished value, market study values (including but not limited to the NADA Guide), Safeway determined that Ms. Bourg's vehicle was a "total loss." Safeway then determined the salvage value of the vehicle—$12,726.00—by evaluating the tread on the tires (two of the four tires had tread of 3/32 versus 11/32 treat on the other two tires), wearing of the carpet on the left front, and staining on the left front seat bottom. Furthermore, Ms. Simoneaux stated that the NADA Guide value of $14,650.00 presented in Ms. Bourg's November 28, 2017 counteroffer was incorrect because that inflated value did not take into consideration the impact of the actual mileage on the vehicle's valuation, which results in a lower valuation.

The affidavit of Ms. Simoneaux submitted by Safeway in opposition to Ms. Bourg's motion for summary judgment creates a genuine issue of material fact regarding whether Safeway's decision to declare the vehicle a "total loss" and the amount of its settlement offer was arbitrary, capricious, or without probable cause. There exists a genuine issue of material fact as to the fair market value that should be used in determining whether Ms. Bourg's vehicle was a "total loss." Based on our *de novo* review of the record, we find that the trial court erred in granting summary judgment in favor of Ms. Bourg.[9]

### DECREE

Based on the foregoing, the September 18, 2018 judgment granting Plaintiff Susan Bourg's motion for summary judgment against Defendants Chris Martinez and Safeway Insurance Company of Louisiana, and awarding Heather and Susan Bourg[10] damages, penalties, and attorney's fees in the amount of $22,862.47, plus

---

[9] Accordingly, we pretermit discussion of the defendants' remaining assignments of error.

[10] We note that were we not reversing the September 18, 2018 judgment, the portion of the judgment granting relief to Heather was in error because Heather did not move for summary

18

costs and interest, is hereby reversed. This matter is remanded to the trial court.

All costs of this appeal are assessed equally among the parties.

**REVERSED; REMANDED.**

---

judgment, and she was dismissed from the suit prior to the hearing and ruling on Ms. Bourg's motion for summary judgment.

Additionally, the portion of September 18, 2018 judgment rendered against Chris Martinez was in error because Ms. Bourg only filed her motion for summary judgment against Safeway. Louisiana Code of Civil Procedure article 966(F) makes clear that a summary judgment may be "rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." See also **Leet v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.**, 2018-1148 (La. App. 1st Cir. 2/28/19), 274 So. 3d 583, 590-91. As held by our Supreme Court, a court cannot render a motion for summary judgment dismissing a claim which has not been challenged by the pleading. **Hoover v. Hoover**, 2001-2200 (La. 4/3/02), 813 So. 2d 329, 334.